# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JOSE A. JUSINO, | : | |
| Plaintiff, | : | CASE NO. 3:16-cv-961 (MPS) |
| | : | |
| v. | : | |
| | : | |
| MARK FRAYNE, et al., | : | |
| Defendants. | : | August 2, 2016 |
| | : | |

## INITIAL REVIEW ORDER

Plaintiff Jose A. Jusino, currently incarcerated at the Northern Correctional Institution in

Somers, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983 asserting claims for

deliberate indifference to mental health needs and violation of the Americans with Disabilities

Act. The plaintiff names as defendants Mark Frayne, Gerard Gagne, Jr., Paul Chaplin, Robert

Berger, Craig Burns, Scarlett Forbes, Andrea Reischerl, and Brian Liebel. All defendants are

named in individual and official capacities.

Under section 1915A of title 28 of the United States Code, the Court must review

prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious,

that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a

defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must

assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments

[they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed

allegations are not required, the complaint must include sufficient facts to afford the defendants

fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.    <u>Allegations</u>

The plaintiff has been diagnosed with multiple psychological disabilities. Although disputed by the defendants, he claims to have a documented brain impairment.

On February 28, 2013, the plaintiff was rushed to an outside emergency room for an overdose. On March 3, 2013, he barricaded himself in his cell and set fire to his property. On March 7, 2013, the plaintiff was transferred to Northern Correctional Institution ("Northern"), the state's most restrictive correctional facility. At Northern, the plaintiff's mental health treatment is supervised by defendant Frayne. The plaintiff alleges that defendant Frayne assisted the state prosecutor in a state matter which was an attempt to kill him. On March 20, 2013, the plaintiff first asked to participate in the "Start Now" program which was designed to help inmates with coping skills.

On April 8, 2013, the plaintiff was sentenced to life imprisonment without parole. On April 10, 2013, the plaintiff met with defendant Gagne concerning his sentence. The plaintiff

asked defendant Gagne why he did not do a follow-up visit upon the plaintiff's return to Northern following his overdose. The plaintiff alleges that defendant Gagne stated that there was no need for a follow-up because the plaintiff is a sociopath who does not care for others or consequences.

On May 3, 2013, the plaintiff gave defendant Forbes a copy of psychiatric reports and brain scans. The following day, the plaintiff asked defendant Forbes what was wrong with him. She told the plaintiff that he did not have any of those diagnoses. Defendant Forbes stated that the plaintiff was emotionally disturbed, immature and seeking attention. The plaintiff requested treatment and enrollment in the Start Now program. Defendant Forbes refused and stated she was too busy.

On June 18, 2013, the plaintiff engaged in a verbal confrontation with defendant Frayne. The plaintiff requested a new case worker because defendant Forbes was not doing her job. Defendant Frayne refused and threatened to lower the plaintiff's mental health score. The plaintiff agreed that it would be a good idea. Later that day, the plaintiff felt worthless and began cutting himself.

On November 7, 2013, the plaintiff engaged in another verbal confrontation with defendant Frayne regarding his mental health treatment. On November 8, 2013, the plaintiff asked to speak with defendant Forbes while she was in his housing unit. Defendant Forbes stated that she was not touring the unit. The plaintiff felt angry, worthless, and ignored; he decided to overdose. While waiting for an ambulance, defendant Forbes told the plaintiff that she was coming back to see him and that he did not have to do something stupid. The plaintiff responded that suicide was not stupid, only her excuses were.

3

The plaintiff remained at the University of Connecticut Health Center on suicide watch from November 8, 2013, until November 12, 2013. He was evaluated by a psychologist and psychiatrist who diagnosed him as suffering from major depression disorder. They prescribed Prozac and recommended intense therapy.

On November 14, 2013, defendant Frayne told the plaintiff that Prozac had serious side effects, including breast growth, and that he would have defendant Gagne prescribe a more suitable medication. The plaintiff asked defendant Frayne about therapy and requested participation in the Start Now program. Defendant Frayne became angry and told the plaintiff that he would not receive anything beyond the protocol. Defendant Frayne stated that the plaintiff could not expect to be rewarded for his actions. The plaintiff felt hopeless and began to cut himself.

The last week of November 2013, the plaintiff submitted an inmate request to defendant Gagne concerning Prozac. On December 4, 2013, defendant Gagne told the plaintiff that he had discontinued the Prozac and that the plaintiff needed no medication.

On December 7, 2013, defendant Burns placed the plaintiff on observation because of a letter the plaintiff had written. On December 12, 2013, after a conversation with defendant Frayne, the plaintiff attempted to hang himself. On December 23, 2013, the plaintiff spoke with defendant Burns regarding his mental health needs.

On April 17, 2014, the plaintiff was placed on mental health observation. On April 23, 2014, defendant Gagne prescribed incorrect medication for the plaintiff. When the plaintiff complained that the medication was not working and that he was experiencing side effects, the medication was discontinued.

4

On September 29, 2014, defendant Frayne placed the plaintiff on observation in retaliation for a lawsuit he filed against defendant Frayne in state court. On October 1, 2014, defendants Frayne and Gagne told the plaintiff the he would not receive treatment until he stopped complaining and got control of his emotions.

On November 4, 2014, the plaintiff met with defendants Reischerl and Forbes. He signed a release to enable them to obtain brain scan records. On December 29, 2014, he signed a release to enable defendant Reischerl to obtain psychiatric and neuropsychology reports.

On December 10, 2014, the plaintiff was caught in possession of 2000 mg of Seroquel which he purchased from other inmates.

On April 20, 2015, the plaintiff smashed his television on the floor and swallowed batteries in an attempted suicide. On April 22, 2015, he insulted defendant Frayne, who responded by assigning himself as the plaintiff's caseworker. On April 23, 2015, the plaintiff cut himself and threatened to kill defendant Frayne.

On June 24, 2015, the plaintiff met with someone from the Office of Protection and Advocacy. On July 2, 2015, defendant Gagne told the plaintiff that persons from that office could recommend treatment but no one could tell him what to do.

On October 6, 2015, the plaintiff met with defendant Chaplin and informed him of his concerns and mental health needs. Defendant Chaplin stated that he would return in two weeks. He did not return for eight months. On February 28, 2016, the plaintiff threatened to harm himself.

The conditions at Northern have caused the plaintiff's mental health to deteriorate. He has become obsessed with suicidal thoughts. The inmates in his housing unit do not have mental

illness. They criticize him and provoke him for their entertainment.

The mental health services at Northern are inadequate. Staff frequently speak with the plaintiff at the cell door, within hearing of other prisoners and staff. If the plaintiff refuses to speak with staff under these circumstances, he is considered non-compliant or refusing treatment. Even in the medical screening rooms, conversations are not private. The rooms are equipped with audio surveillance. When the plaintiff experiences an emergency, staff will not speak with him if they are not assigned to his case. Instead, they threaten him with placement on behavior observation status.

In the behavior observation cells, the plaintiff is stripped naked, confined alone, subject to lights in the cell at all times, and denied hot meals, utensils, reading or writing materials, personal hygiene products, showers, and toilet tissue. These conditions make the plaintiff more prone to suicide, paranoid hallucination, anxiety, obsession, negative thoughts, and extreme anger. It reduces the chance that he would report suicidal feelings in the future. The only treatment provided is the Northern protocol of once-a-month follow-up which is provided to all inmates, whether mentally ill or not.

The plaintiff has received disciplinary reports for behavior that is symptomatic of his mental illness. These disciplinary reports prevent the plaintiff from progressing sufficiently to be transferred from Northern.

II.   Analysis

In the introduction to the complaint, the plaintiff identifies two claims, an Eighth Amendment claim for deliberate indifference to serious mental health needs and a claim for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. In the

section entitled "Claims for Relief," the plaintiff asserts only the Eighth Amendment claim.

A.   Americans with Disabilities Act

Although the plaintiff references the ADA in the introduction of his complaint, he does not assert any claims for violation of the ADA or reference it in his prayer for relief. Liberally construing the complaint, however, the Court considers whether the allegations state a plausible claim for violation of the ADA.

The purpose of the ADA, is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The statute is intended "to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

The plaintiff has not identified any program or service that is routinely provided to able-bodied inmates but denied to him. The ADA does not apply to claims regarding the quality of medical or mental health services provided by correctional departments or provide a remedy for medical malpractice. *See Maccharulo v. New York State Dep't of Correctional Servs.*, No. 08 Civ. 301 (LTS), 2010 WL 2899751, at *2 (S.D.N.Y. July 21, 2010) (citations omitted). Thus, there is no factual basis for an ADA claim based on the plaintiff's dissatisfaction with mental health services. Any ADA claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

B.   Deliberate Indifference to Mental Health Needs

To state an Eighth Amendment claim, a prisoner must show that the alleged conduct is

7

objectively, sufficiently serious and that the defendant acted with a sufficiently culpable state of mind, that is, that he acted maliciously and sadistically to cause harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Thus, the plaintiff must establish both that his mental health need was serious and that the defendants acted with sufficiently culpable states of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Salahuddin v. Goord*, 467 F.3d 262, 279-80 (2d Cir. 2006). Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference. *See Ventura v. Sinha*, 379 F. App'x 1, 2-3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

The plaintiff alleges that prescribed treatment was not provided and his requests for treatment were ignored. Crediting the plaintiff's allegations, it appears that the defendants' conduct was more than negligence. Thus, the claim will proceed.

It is well settled in this circuit that a plaintiff must allege facts demonstrating the personal involvement of each defendant in the alleged constitutional deprivation before damages can be awarded. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). *See Turner v. Boyle*, 116 F. Supp. 3d 58, 96 (D. Conn. 2015) (noting the court should not dismiss pro se complaint without affording plaintiff opportunity to amend where there is a possibility that valid claim might be stated).

The plaintiff's mental health treatment was provided by defendants Frayne, Gagne, and Forbes. The plaintiff has alleged sufficient facts showing the involvement of defendants Frayne, Gagne, and Forbes in his mental health treatment.

8

Defendant Burns is the Chief of Psychiatric Services for the Department of Correction. The plaintiff alleges that defendant Burns placed him on observation on December 7, 2013, because of a letter the plaintiff had written, and spoke with him on December 23, 2013, regarding mental health needs. Defendant Chaplin is identified as the Director of Psychology at Correctional Managed Health Care. The plaintiff alleges that he spoke to defendant Chaplin about his mental health needs and that defendant Chaplin said he would return in two weeks but did not return for eight months. Construed liberally, the allegations are sufficient to demonstrate that defendants Burns and Chaplin were aware of the plaintiff's mental health treatment concerns and did nothing to address them.

The plaintiff alleges that defendants Berger and Leibel denied grievances. Defendant Berger is the Director of Mental Health and Psychiatric Services for Correctional Managed Health Care and defendant Leibel is a Health Services Administrator. The mere denial of a grievance is insufficient to establish personal involvement of a supervisory defendant. *See Smith v. Fischer,* No. 13-CV-6127-FPG, 2016 WL 3004670, at *12 (W.D.N.Y. May 23, 2016) (denial of grievance insufficient to establish personal involvement absent allegations that official looked into issues raised in grievance or responded to grievance in detail). The plaintiff alleges no facts suggesting the defendants Berger or Liebel investigated his grievances or provided detailed responses. Further, the grievances attached to his original complaint but omitted from the amended complaint show that the initial grievances were investigated and responded to by defendant Frayne. Defendant Berger denied one grievance appeal. There are no responses by defendant Leibel. Thus, the plaintiff fails to allege facts showing their involvement in his claims and the Court concludes that he would be unable to do so. Thus, the claims against defendants

9

Berger and Leibel are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Defendant Reischerl is an Advanced Practice Registered Nurse. The plaintiff alleges only that he signed a release to enable her to obtain brain scans and other medical reports. He does not allege that she failed to obtain the reports or that the reports were not made available to the plaintiff's treatment providers. The Court can discern no actions by defendant Reischerl that violated the plaintiff's constitutional rights. Thus, all claims against her are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

III.    Conclusion

The Court enters the following orders:

(1)    All claims against defendants Berger, Liebel, and Reischerl and any ADA claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

(2)    **The Clerk shall** verify the current work addresses for defendants Frayne, Gagne, Forbes, Burns, and Chaplin with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)    **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the

Amended Complaint on defendants Frayne, Gagne, Forbes, Burns, and Chaplin in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4)     **The Clerk shall** send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(5)     **The Clerk shall** send a courtesy copy of the Amended Complaint and this Initial Review Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(6)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(7)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(8)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(9)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

11

(10)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

**SO ORDERED** this 2nd day of August 2016 at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge